Filed 7/25/24  P. v. Rowe CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D082958 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. SCE199406) |
| ELIJAH WAYNE ROWE, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Daniel G. Lamborn, Judge.  Affirmed.

Lizabeth Weis, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

In 2000, a jury found Elijah Wayne Rowe guilty of the first degree murder of Ireneo Soto Aguilar (Pen. Code, § 187, subd. (a); count 1) and robbery (§ 211; count 2) and found true an allegation that the murder was committed in the course of the robbery (§ 190.2(a)(17)).  Rowe was originally sentenced to life without the possibility of parole for the murder and resentenced in 2016 to an indeterminate term of 25 years to life.

In 2022, Rowe petitioned the court for resentencing under former Penal Code section 1170.95 (now section 1172.6). He appeals from the trial court's order denying this petition. Rowe's appellate counsel's brief, ostensibly under *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*) rather than *People v. Delgadillo* (2022) 14 Cal.5th 216 (*Delgadillo*), indicates counsel did not identify any arguable issues for reversal on appeal. Counsel asks us to review the record for error as required by *Wende*. We offered Rowe the opportunity to file a brief under *Wende*, but he has not done so.

Based on our independent review of the record, we find no reasonably arguable appellate issues. We thus affirm.

## I.

### A.

In April 1999, Soto was found dead in a flood channel with his pockets turned out, his wallet nearby, blood spattered on the walls of the channel, and bloody bricks and rocks—one weighing 43 pounds—near his body.

Rowe was charged with robbery and Soto's murder while engaged in the commission of a robbery. His codefendants—his older brother Michael Rowe and Boby Woodall—pled guilty to first degree murder and voluntary manslaughter, respectively. A jury found Rowe guilty of all charged offenses, and he ultimately was sentenced to an indeterminate term of 25 years to life.

### B.

Twenty-two years after his conviction, Rowe sought resentencing under section 1172.6. The provision allows anyone convicted of (1) felony murder, (2) murder under the natural and probable consequences doctrine, or (3) murder under any other theory where malice is imputed to a person based

solely on that person's participation in a crime to petition the trial court to be resentenced.  (§ 1172.6(a).)

Based on the limited record of conviction then available, the People conceded Rowe likely made a prima facie showing of entitlement to relief under the statute, and the trial court scheduled an evidentiary hearing on the petition.  In their brief, the People, relying on the clerk's and reporter's transcripts and the transcript of Rowe's April 2023 parole suitability hearing, argued Rowe was ineligible for resentencing beyond a reasonable doubt because he was, alternatively: (1) the actual killer; (2) an aider and abettor to murder who acted with either an intent to kill or implied malice; or (3) a major participant in the robbery who acted with reckless indifference to human life.

The trial court held an evidentiary hearing in October 2023.  The court heard argument from both sides and considered the briefing, all the authorities cited, the preliminary hearing transcript, the trial transcripts, and the parole hearing transcript.  The court found "as a bottom line . . . that the record does establish [Rowe] can presently be convicted of murder" under each of the People's theories of liability.

In finding the evidence established Rowe's guilt as the actual killer, the trial court relied on (1) the medical examiner's testimony that Soto died of blunt force injuries to the head consistent with a 43-pound rock being dropped on his head and bricks being thrown from above the flood channel; (2) the testimony of an acquaintance of Rowe's brother that Rowe told him "he dropped a rock on [Soto's] head" and "had never seen blood squirt so far," although the court also acknowledged the acquaintance testified it was possible Rowe's brother said that and admitted he was "a little bit stoned" and an alcoholic at the time; (3) the testimony of Rowe's brother's cellmate

3

showing Rowe was "jubilant or exalting or bragging about an act that he had done" in stating "he had earned his bolts"; and (4) Rowe's statements at his parole hearing that he personally hit Soto, kicked and beat him once he fell, and slammed a 43-pound rock on his head, although the court acknowledged, as did the court in *People v. Mitchell* (2022) 81 Cal.App.5th 575, that it should exercise "some caution" in considering statements from parole hearings.

In alternatively concluding the evidence showed Rowe aided and abetted in the murder with the deliberate intent to kill, the court noted that after Rowe and his codefendants beat Soto and threw him in the channel, Rowe returned to the scene with his brother and participated in throwing rocks and/or bricks to land on the head of a "vulnerable" and "critically injured" person, establishing "beyond a reasonable doubt that [Rowe] intended to kill" him.

Finally, in further concluding the evidence showed Rowe was a major participant in a robbery who acted with reckless indifference to human life, the trial court found that Rowe "falls within almost all" the factors articulated in *People v. Banks* (2015) 61 Cal.4th 788 and *People v. Clark* (2016) 63 Cal.4th 522. The court acknowledged Rowe's brother's testimony that Rowe was not personally involved in the killing and that Rowe told him to leave Soto alone but concluded it did not persuasively "contraven[e] all of the other evidence" "already alluded to."

The court accordingly denied Rowe's petition.

## II.

Rowe's counsel filed a purported *Wende* brief setting forth a statement of the case and facts, identifying no grounds for reversal of the judgment, and asking this court to independently review the record for error. To assist the court in its review under *Anders*, counsel stated she considered the following

4

issue in evaluating the potential merits of this appeal: "Whether the record contains substantial evidence to support the court's finding beyond a reasonable doubt that [Rowe] was guilty of murder under a still valid theory."

As this court issued a *Wende* rather than a *Delgadillo* order, we exercise our discretion to independently review the entire record as required by *Wende* and *Anders*. (*Delgadillo*, 14 Cal.5th at pp. 232-233.) In so doing, we review the trial court's findings for substantial evidence and its application of those facts to the statute de novo, construing the evidence in the light most favorable to the trial court's ruling. (*People v. Williams* (2020) 57 Cal.App.5th 652, 663.)

On the record before it, the trial court properly concluded the evidence established beyond a reasonable doubt that Rowe could be convicted of murder under the amended murder statutes.

Rowe made numerous statements concerning his personal involvement in Soto's death. There was evidence Rowe told a friend's girlfriend the night of the murder that when he and his brother returned to the scene several hours after beating and robbing Soto, they discovered he was not dead and "they finished him off." When Rowe and his brother visited an acquaintance of Rowe's brother that same evening, they told him they thought they had just killed someone and that they had taken 80 dollars from him. Rowe told the acquaintance that "he dropped a rock on [Soto's] head" and "had never seen blood squirt so far." The following morning, Rowe and his brother told their codefendant Boby, Boby's stepfather, and Boby's girlfriend that "they had gone back and finished it" by "throwing rocks at [Soto's] head" and "bashing his head in," and "they had never seen blood squirt out like that before." The next day, after his brother was arrested, Rowe told his mother and a family friend he was "as involved in it as [his brother] was." Two days

5

later—the day Rowe was arrested—he told his friend, the friend's sister, and the sister's roommate that he and his friends robbed and "killed somebody," and the sister recalled Rowe being "very upset" because his brother was in prison for "something he felt he was partly responsible for." Rowe's brother later told his cellmate that he and Rowe both slammed the large rock on Soto's head but that he alone "was going to come in and take the blame" so "his little brother" would not "spend[ ] the rest of his life in prison."

According to the medical examiner, Soto died of blunt force trauma injuries to the head consistent with a 43-pound rock and bricks being dropped on his skull. A criminalist testified the blood spatter on the channel walls also was "consistent with dropping a 43-pound rock on somebody's head."

Although Rowe's counsel argued at the evidentiary hearing that many witnesses testified to things that "they"—rather than just Rowe—did or said, Rowe unequivocally stated under oath during his 2023 parole hearing that he personally hit Soto, he "continued beating him and kicking him" even after "he was unconscious," and he later returned with his brother and personally picked up and "slamm[ed] the [43-pound] rock down on [Soto's] head," killing him. Rowe acknowledged his actions were "very serious" and "took a man from his family, from his kids."

Accordingly, regardless of Rowe's brother's conflicting testimony that Rowe was not personally involved in harming Soto and encouraged him to stop and "'leave [Soto] alone,'" the record contains substantial evidence that, at a minimum, Rowe was an active and meaningful contributor to Soto's death, and that his personal action of slamming a rock onto Soto's head was intended to "finish[ ] him off." As the People argued at the hearing, "[t]here's no other reason" to drop a heavy rock on a prone and injured person's skull. We thus conclude the trial court's finding that Rowe is guilty beyond a

reasonable doubt of murder under now-operative statutes was supported by substantial evidence and a correct application of that evidence to the law.

We have not discovered any arguable issues for reversal on appeal. Further, competent counsel has represented Rowe on this appeal. We thus discern no grounds for relief.

III.

We affirm the order denying Rowe's petition for resentencing.


CASTILLO, J.

WE CONCUR:


HUFFMAN, Acting P. J.


IRION, J.

7